UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Workman Securities Corporation, a Minnesota corporation, and Robert Vollbrecht, a Minnesota resident,<br><br>                                      Plaintiffs,<br><br>      v.<br><br><br>Phillip Roy Financial Services, LLC, a Florida limited liability company, and Phillip Roy Financial Consultants, LLC a Florida limited liability company,<br><br>                                      Defendants. | Court File No. 09-cv-01723(PJS/JSM)<br><br><br>**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS OR TRANSFER** |

## INTRODUCTION

Defendants Phillip Roy Financial Services, LLC ("PRFS") and Phillip Roy Financial Consultants, LLC ("PRFC"),  (collectively, "Phillip Roy"), submit this memorandum of law in support of their amended motion to dismiss or transfer venue under Rules 12(b)(2) and 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 1404(a) and 1406(a).  Phillip Roy requests that the Court issue an order dismissing the Complaint of plaintiffs Workman Securities Corporation ("Workman") and Robert Vollbrecht ("Vollbrecht") for lack of personal jurisdiction and improper venue. Alternatively, the Court should issue an order transferring this case to the Middle District of Florida.

Phillip Roy is entitled to a dismissal because they have insufficient contacts with Minnesota to allow the Court to exercise jurisdiction over them.  Even if this were not so,

Phillip Roy is entitled to transfer because plaintiffs' claims arise out of events that occurred in Florida and Florida is where the defendants reside.  Because the convenience of the parties and witnesses and the interest of justice strongly favor Florida as the proper venue, Phillip Roy requests that the Court transfer this action to the United States District Court for the Southern District of Florida.

## BACKGROUND

Plaintiffs' Complaint is unusual.  Plaintiffs' Complaint admits that plaintiffs are not parties to any contracts or agreements with Phillip Roy.  (Compl. ¶ 18.)  Plaintiffs, despite alleging that Defendants subject to personal jurisdiction in Minnesota, state that defendants' "business is solely limited to the sale of fixed insurance products within the State of Florida."  (Compl. ¶ 18.)  Moreover, Plaintiffs do not assert any claims against Phillip Roy.  Instead, plaintiffs claim that "Defendants are threatening plaintiffs with the initiation of a legal action through the Prospective Florida Action" (Compl. ¶¶ 44, 52, 57, 65), and that plaintiffs are entitled to: (1) a declaratory judgment under the Minnesota Trade Secrets Act that "[a]ny information Defendants are claiming as confidential and proprietary does not constitute a trade secret" (Count I); (2) a declaratory judgment under Minnesota Statutes §555.02 that "plaintiffs have not engaged in any tortiuous conduct related to any agreements entered into by and between Defendants" (Count II); (3) a declaratory judgment similar to Count I under Florida law (Count III); and (4) a declaratory judgment under Florida Statutes 86.021 that "plaintiffs have not engaged in any tortiuous conduct related to any agreements entered into by and between Defendants"

(Count IV).  In essence, plaintiffs are seeking a declaratory judgment that they win the lawsuit Phillip Roy initiated against them in Florida.

Some issues in the Complaint need clarification.  There is no "Proposed Florida Action."  Instead, there is a state court action in Florida.  (Affidavit of Adam A. Gillette ("Gillette Aff.") Ex. 1.)  That action was filed in the Circuit Court for Florida's Sixth Judicial District on July 6, 2009, the same day as plaintiffs' Complaint.  (Exs. 4, 5.)  As plaintiffs' Complaint was filed at 4:33 p.m. Central Time, plaintiffs' Complaint was filed after Phillip Roy initiated its suit in Florida.  (Exs. 4-6.)

Secondly, while plaintiffs claim that PRFC is "a Florida limited liability company" (Compl. ¶4.), it is actually a Delaware limited liability company.  (Affidavit of Phillip R. Wasserman ("Wasserman Aff.") ¶ 3; Affidavit of Adam A. Gillette "Gillette Aff." Ex. 3.)

Finally, and most importantly, while plaintiffs' claim that the Court has personal jurisdiction over defendants and that "Defendants have availed themselves within Minnesota due to their course of conduct," (Compl. ¶ 6), the Court does not have personal jurisdiction over Phillip Roy.

As mentioned above, PRFS is a Delaware limited liability company, and PRFC is a Florida limited liability company.  (Wasserman Aff. ¶ 3; Gillette Aff. Exs. 3, 4.)  Both companies have their principle offices at 28463 U.S. Highway 19 North, Suite 102, Sarasota, Florida.  (Id.)  Phillip R. Wasserman ("Wasserman") is the President of Phillip Roy Financial Services, LLC, and the President of Phillip Roy Financial Consultants, LLC.  (Wasserman Aff. ¶ 2.)  Wasserman has held these positions since the companies were formed.  (Id.)

Neither PRFS nor PRFC owns, uses, or possesses any real or personal property in Minnesota. (Wasserman Aff. ¶ 4.) Neither PRFS nor PRFC transacts any business within the Minnesota. (Id. ¶ 5; Compl. ¶ 18.) Neither PRFS nor PRFC has any employees in Minnesota. (Wasserman Aff. ¶ 6.) Neither PRFS nor PRFC maintains a telephone or other communication device within Minnesota. (Id. ¶ 7.) Neither PRFS nor PRFC has ever registered with the Minnesota Secretary of State as a foreign corporation doing business in Minnesota. (Id. ¶ 8.) With the exception of this lawsuit, neither PRFS nor PRFC has been involved in litigation or other adjudication of any claim involving a Minnesota resident. (Id. ¶ 9.)

Neither Wasserman, nor any other officer of PRFS nor PRFC ever visited the State of Minnesota in negotiating or performing the Confidentiality Agreement that forms the basis of Plaintiff's Complaint. (Id. ¶ 14.) As noted on the first page of Exhibit A to the Complaint, the Confidentiality Agreement at issue was executed between Phil & Associates, a Florida company based in Clearwater, and John Leonard, a Florida resident. (Id. ¶ 11.) The Confidentiality Agreement was not executed in Minnesota, is governed by Florida law, and contains a venue selection clause that obligates legal action to take place in Pinellas County, Florida. (Id. ¶ 12.) Any and all negotiations concerning the Confidentiality Agreement took place in Florida, not Minnesota. (Id. ¶ 13.) Neither PRFS nor PRFC has conducted any business with plaintiff Workman Securities Corporation. (Id. ¶ 10.)

**ARGUMENT**

Phillip Roy requests that the Court dismiss the case for lack of personal jurisdiction and improper venue or, in the alternative, transfer venue to Florida. Fundamental fairness and due process concerns dictate that plaintiffs' claims must be tried in a Court with some connection to defendants.   None of the parties and witnesses involved in negotiating the Confidentiality Agreement reside in Minnesota.  Similarly, none of the actions that plaintiffs allege form the factual basis for their claims took place in Minnesota.  Accordingly, in the interest of justice and for the convenience of the witnesses and parties, plaintiffs' claims should be dismissed or venued in Florida.

I.    **THE COURT HAS NO PERSONAL JURISDICTION OVER PHILLIP ROY**

   A.    **Standard Of Review Under Rule 12(b)(2).**

In a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), the plaintiff has the burden of setting forth a prima facie case of personal jurisdiction.  Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996).  This Court may exercise personal jurisdiction over defendants only if: (1) jurisdiction is permissible under Minnesota's long-arm statute; and (2) jurisdiction is compatible with the due process requirements of the Fifth and Fourteenth Amendments. Digi-Tel Holdings, Inc. v. Proteq Telecomm., Ltd., 89 F.3d 519, 522 (8th Cir. 1996). Because, however, Minnesota's long-arm statute extends jurisdiction to the maximum limit consistent with due process, the Court must only determine whether the federal due process standards are satisfied.  Minnesota Mining & Mfg. Co. v. Nippon Carbide Indus. Co., Inc., 63 F.3d 694, 697 (8th Cir. 1995).  Due process requirements are satisfied where

a defendant has "minimum contacts" with the forum state, such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

The main question in assessing personal jurisdiction is "whether a defendant has purposefully availed itself of the privilege of conducting activities in the forum state, and should, therefore, reasonably anticipate being haled into court there." Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 561 (8th Cir. 2003). To determine if these standards are met, courts apply a five-factor test to determine whether a non-resident defendant has the requisite minimum contacts to permit the state to exercise jurisdiction: (1) the quantity of the defendant's contacts with the forum state; (2) the nature and quality of the contacts; (3) the relationship between the cause of action and the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties. Id. Of these five factors, the first three are the most important. See, e.g., Digi-Tel, 89 F.3d at 523. Further, in evaluating these factors, courts look at the totality of contacts, rather than the significance of each contact individually. Int'l Mktg. Res., Inc. v. Maquiplex, L.L.C., No. Civ. 02-3459, 2002 WL 31689436, at *3 (D. Minn. Nov. 27, 2002).[1]

Personal jurisdiction may be obtained through specific or general jurisdiction. Id. at *2. "Specific jurisdiction can only be found if the controversy is related to or arises out of the defendant's contacts with the forum state." Johnson v. Woodcock, 444 F.3d 953,

---

[1]   All unpublished cases cited in this memorandum are attached the Affidavit of Adam A. Gillette.

956 (8th Cir. 2006) (internal quotations and citations omitted).  "General jurisdiction exists when a defendant's contacts with the state are so numerous that the defendant may be sued in the forum state over any controversy, whether arising out of the defendant's contacts with the forum state or not."  Maquilaplex, 2002 WL 31689436, at *2.  Because plaintiffs cannot establish personal jurisdiction under either analysis, this case should be dismissed.

      **B.**      **No Specific Personal Jurisdiction Exists.**

Plaintiffs cannot meet their burden of demonstrating that Phillip Roy has sufficient contacts with Minnesota to support specific jurisdiction.

      **1.**      **The Nature, Quality, and Quantity of Any Contacts Between Phillip Roy and Minnesota are Insufficient to Support Personal Jurisdiction**

Plaintiffs cannot establish that the first and second factors – the quantity of contacts, and the nature and quality of contacts that Phillip Roy has with Minnesota – support personal jurisdiction.  Only contacts at the time the cause of action arose, the time the suit was filed, or within a reasonable period of time immediately prior to filing the lawsuit are relevant to whether personal jurisdiction exists.  Pecoraro, 340 F.3d at 562.  Here, Phillip Roy's contacts must be more than "random, fortuitous, or attenuated," and must instead create a "substantial connection" with Minnesota.  Wunderlich-Malec Sys., 2005 WL 859263, at *3 (citing Digi-Tel, 89 F.3d at 522).  Minnesota federal courts have repeatedly rejected jurisdiction over defendants who have more substantial or numerous contacts with Minnesota than Phillip Roy in this case. Thus, this court should reject jurisdiction here.

In <u>Grace Investments, Inc. v. Global Energy Trust, LTD</u>, the plaintiff, a Minnesota company, sued the defendant, an Indiana corporation, and its various representatives for breach of a financial transaction contract.  Civ. No. 06-1041, 2006 WL 2061640, at *1 (D. Minn. July 24, 2006).  The defendant corporation's chief executive officer and the secretary/treasurer were residents of Indiana, and never visited Minnesota.  <u>Id</u>.  The defendant corporation did not have an office or a registered agent in Minnesota.  <u>Id</u>.  The contract was negotiated by phone and facsimile, and no employee of the defendant corporation ever visited Minnesota to negotiate the contract.  <u>Id</u>.  The defendant corporation had, however, been involved in a custodial agreement with the plaintiff and another Minnesota corporation in the past.  <u>Id</u>.  Further, one of the defendant corporation's representatives, who was a California resident, participated in contract negotiations between the plaintiff and defendant, which included several communications to Minnesota by telephone, facsimile and email.  <u>Id.</u> at *3.

The court dismissed the plaintiff's case for lack of personal jurisdiction.  The court initially noted that neither of the corporation's officers had visited Minnesota.  <u>Id</u>. at *2. Further, the contract was not negotiated in Minnesota.  <u>Id</u>.  The court held that "[s]imply entering into a contract with a Minnesota resident is insufficient to find specific jurisdiction."  <u>Id</u>. (citing <u>Minnesota Mining</u>, 63 F.3d at 698).  Finally, the court ruled that despite multiple contacts by telephone, facsimile, and email by the defendant's California representative, "[c]ontact by phone or mail is insufficient to justify exercise of personal jurisdiction under the due process clause."  <u>Id</u>. at *3 (quoting <u>Johnson</u>, 444 F.3d at 956).

Likewise, in <u>Wunderlich-Malec Systems, Inc. v. Equipment and Turbines Engineering Corp.</u>, a Minnesota corporation providing advanced engineering services sued a Florida corporation over two contracts.  Civ. No. 04-5067, 2005 WL 859263, at *1 (D. Minn. Apr. 11, 2005).  The contracts were signed by the defendant in Florida, where its principal place of business was located, and by the plaintiff in Minnesota.  <u>Id</u>.  At least one agreement contained a Minnesota choice-of-law provision.  <u>Id</u>.  The plaintiff alleged that the defendant's negotiations and communications regarding the contracts included "well over 100 email communications, as well as over 100 telephone calls" with the plaintiff in Minnesota.  <u>Id</u>. at *2.  Further, the defendant sent a number of reports to the plaintiff in Minnesota, and even had a representative attend a function at the plaintiff's offices in Minnesota.  <u>Id</u>.  At no time during the agreement, however, did the defendant ship or deliver equipment that it was working on to Minnesota, and it never provided services or installation in Minnesota.  <u>Id</u>.

The <u>Wunderlich-Malec</u> court dismissed the case for lack of personal jurisdiction. The court ruled that two contracts and various communications with the plaintiff in Minnesota were insufficient to establish the necessary minimum contacts.  <u>Id</u>. at *4.  The defendant's contact with Minnesota stemmed only from the fact that it executed the contracts with a Minnesota corporation to perform work and services in other states, Michigan and Wisconsin.  <u>Id</u>.  Neither contract contemplated work to be performed in Minnesota, and neither contract implicated future consequences with the forum state, aside from primarily warranty obligations.  <u>Id</u>.  Accordingly, the contractual relationship was not enough to establish personal jurisdiction.  <u>Id</u>.

In <u>International Marketing Resources, Inc. v. Maquilaplex, L.L.C.</u>, a Minnesota corporation that provided outsourced sewing services for manufacturers sued a Texas limited liability company over an agreement for production sewing services.  2002 WL 31689436, at *1.  Despite the fact that the plaintiff alleged that the defendant made several hundred phone calls to Minnesota in negotiating the agreement, the court dismissed the case for lack of personal jurisdiction.  <u>Id</u>. at *1, 3.   The court noted that the plaintiff never visited Minnesota in connection with the contract, and no part of the contract was performed in Minnesota.  <u>Id</u>. at *3. Further, even if Minnesota law governed the agreement, the court held that a choice-of-law provision is not sufficient to establish personal jurisdiction.  <u>Id</u>.

In this case, Phillip Roy has no material contacts with the state of Minnesota in connection with the plaintiffs' causes of action.  Plaintiffs concede that they are not parties to any contracts or agreements with Phillip Roy.  (Compl. ¶ 18.)  The Confidentiality Agreement was not negotiated in Minnesota and does not involve any Minnesota residents.  No Phillip Roy employee ever visited Minnesota in connection with the Confidentiality Agreement or any other matter alleged in plaintiffs' Complaint. (Wasserman Aff. ¶ 14.)  From the record before the Court, the only contacts Phillip Roy had with Minnesota were communications with plaintiffs regarding its claims in the Florida lawsuit.  Plaintiffs' Complaint states that Phillip Roy's "business is solely limited to the sale of fixed insurance products in Florida." (Compl. ¶ 11.)  Phillip Roy does not have any employees, property, or business in Minnesota.  (Wasserman Aff. ¶¶ 4-8.)

Moreover, even if the Confidentiality Agreement involved a Minnesotan, the mere existence of that agreement, which is between parties other than plaintiffs, is not enough to establish specific jurisdiction over Phillip Roy in Minnesota.  See Grace Investments, 2006 WL 2061640, at *2.  The Confidentiality Agreement did not contemplate any work in Minnesota by Phillip Roy, nor did it implicate any long-term, future relationship that implicates Minnesota.   See Wunderlich-Malec Sys., Inc., 2005 WL 859263, at * 4. Here, Phillip Roy's contact with Minnesota stems only from the fact that it brought suit in Florida against two Minnesota citizens.

Finally, any contacts that plaintiffs could possibly assert to claim that personal jurisdiction is satisfied would be communications via email, mail, telephone or facsimile. But as the cases above show, courts have consistently held that these communications are not enough to satisfy due process requirements for personal jurisdiction.  See, e.g., Grace Investments, 2006 WL 2061640, at *3, Wunderlich-Malec Sys., Inc., 2005 WL 859263, at *4; Maquilaplex, 2002 WL 31689426, at *3.  Thus, because plaintiffs cannot establish that Phillip Roy has contacts with Minnesota that are anything more than random, fortuitous, or attenuated, plaintiffs' case must be dismissed.

## 2.   There is No Relationship Between the Cause of Action and Any Contacts

"The final three factors cannot support jurisdiction where neither the quantity nor quality of contacts demonstrates that a defendant purposefully availed itself of the benefits of the forum state."  KSTP-FM, L.L.C. v. Specialized Communications, Inc., 602 N.W.2d 919, 925-6 (Minn. Ct. App. 1999).  As established above, neither the

quantity nor quality of contacts between Phillip Roy and Minnesota establish jurisdiction. Nevertheless, the final three factors confirm that no personal jurisdiction exists. Plaintiffs' cause of action arises out the Confidentiality Agreement between citizens of Florida. Plaintiffs cannot point to any connection between Phillip Roy and Minnesota that could plausibly relate to its claims against Phillip Roy. Any contacts that plaintiffs could possibly assert between Phillip Roy and Minnesota are sparse at best. There is no way that any contacts between Phillip Roy and Minnesota allows Phillip Roy to reasonably anticipate being haled into court here. See Pecoraro, 340 F.3d at 561. Accordingly, specific jurisdiction is not established.

### 3. Minnesota Has No Interest in Providing a Forum

"Minnesota's interest in providing its resident with a forum cannot make up for the absence of minimum contacts." Digi-tel, 89 F.3d at 525. Here, even though plaintiffs are located in Minnesota, this state does not have an interest providing a forum for a party that fails to establish the basic due process requirements of jurisdiction. Everything material about this case occurred entirely outside of Minnesota. Thus, this Court does not have an interest in hearing a case against Florida defendants which arose out of events that occurred in Florida between citizens of Florida.

### 4. Defending a Lawsuit in Minnesota is Inconvenient to Phillip Roy

The final factor also weighs against plaintiffs. Defending a lawsuit in Minnesota would be particularly difficult and an undue burden for Phillip Roy. Phillip Roy is based in Sarasota, Florida. Allowing this case to proceed in Minnesota would require Phillip Roy's employees to travel across the country to participate. Moreover, the convenience

of the witnesses weighs in favor of finding no jurisdiction.  Since the alleged conduct

occurred in Florida, and involved third-party Floridians, almost all the relevant witnesses

and documents are in Florida.  Accordingly, the exercise of specific jurisdiction in this

case would be wholly contrary to the traditional notions of fair play and substantial

justice.

### C. Plaintiffs Cannot Establish General Personal Jurisdiction.

Plaintiffs' case should also be dismissed because they cannot meet their burden of

demonstrating that Phillip Roy has sufficient contacts to support general jurisdiction.

There are no additional facts that demonstrate a connection between Phillip Roy and

Minnesota that could be classified as "continuous and systematic."  See Johnson, 444

F.3d at 956 (holding that general jurisdiction exists where contacts between defendant

and forum state are continuous and systematic).

Phillip Roy does not own, use, or possesses any real or personal property in

Minnesota.  (Wasserman Aff. ¶ 4.)  Phillip Roy does not transact any business within

Minnesota.  (Id. ¶ 5.)  Phillip Roy does not have any employees in Minnesota.  (Id. ¶ 6.)

Phillip Roy does not maintain a telephone or other communication device within

Minnesota.  (Id. ¶ 7.)  Phillip Roy is not registered with the Minnesota Secretary of State

as a foreign corporation doing business in Minnesota.  (Id. ¶ 8.)  With the exception of

this lawsuit, neither PRFS nor PRFC has been involved in litigation in Minnesota.   (Id. ¶

9.)  Even if Phillip Roy did conduct business in Minnesota, any agreements between

Phillip Roy and another entity are entirely unrelated to plaintiffs and this lawsuit.  See

Grace Investments, 2006 WL 2061640, at *3 (finding no general jurisdiction where

defendant entered into several other contracts with other parties in Minnesota because other contracts were unrelated to plaintiff).

Phillip Roy has no offices, employees or representatives in Minnesota that could establish general jurisdiction.  Wunderlich-Malec Sys., Inc., 2005 WL 859263, at *4 (holding that general jurisdiction was not established where the defendant had no offices, employees, or representatives in Minnesota).  As such, plaintiffs cannot demonstrate that Phillip Roy continuously and systematically availed itself of the privilege of conducting activities in Minnesota.  Accordingly, Phillip Roy's motion to dismiss should be granted.

## II.   VENUE  IS IMPROPER IN MINNESOTA

Even if personal jurisdiction exists, this matter must still be dismissed because the District of Minnesota is an improper venue for this lawsuit.

### A.   Standard Of Review.

A party may move to dismiss an action for improper venue.  Fed. R. Civ. P. 12(b)(3).  When evaluating the merits of a motion to dismiss for improper venue, the court must assume all facts in the complaint to be true and must construe all reasonable inferences from those facts in the light most favorable to the complainant.  Transocean Group Holdings Pty Ltd. v. S.D. Soybean Processors, LLC, 505 F.Supp.2d 573, 575 (D. Minn. 2007).  In doing so, however, a court need not accept as true wholly conclusory allegations,  Hanten v. School District of Riverview Gardens, 183 F.3d 799, 805 (8th Cir.1999), or legal conclusions drawn by the pleader from the facts alleged.  Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

Phillip Roy seeks dismissal or transfer of plaintiffs' case pursuant to 28 U.S.C. §

1406.  Section 1406 provides:

> (a) The district court of a district in which is filed a case laying venue in the
> wrong division or district shall dismiss, or if it be in the interest of justice,
> transfer such case to any district or division in which it could have been
> brought.

In a diversity case, venue is proper when the case is brought in (1) a judicial

district where any defendant resides, if all defendants reside in the same state, (2) a

judicial district in which a substantial part of the events or omissions giving rise to the

claim occurred, or a substantial part of property that is the subject of the action is

situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction

at the time the action is commenced, if there is no district in which the action may

otherwise be brought.  28 U.S.C. § 1391(a).  Statutory venue requirements are meant to

protect defendants, insuring that "a defendant is not 'haled into a remote district, having

no real relationship to the dispute.'"  Woodke v. Dahm, 70 F.3d 983, 985 (8th Cir. 1995)

(quoting Cottman Transmission Sys., Inc. v. Martino, 36 F.3d 291, 294 (3rd Cir. 1994)).

Minnesota has no real relationship to plaintiffs' dispute with Phillip Roy.

Plaintiffs' cause of action arises out of events that occurred in Florida.  However,

plaintiffs chose to commence suit against Phillip Roy in Minnesota. As a result, the

defendants, neither of whom resides in Minnesota or maintains their principal place of

business there, have been haled into this Court.  Outside of the residence of the plaintiffs,

the State of Minnesota has no relationship to plaintiffs' claims and venue in the District

of Minnesota is improper.

**B.     The Court Should Transfer This Case To Florida.**

Transfer of this case to Florida is proper "[f]or the convenience of parties and witnesses, in the interest of justice" so long as the case "might have been brought" in Florida.  See 28 U.S.C. § 1404(a).  Courts have consistently viewed the language of 28 U.S.C. § 1404(a) as creating a balancing test of three factors: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interest of justice.  See e.g., Nelson v. Master Lease Corp., 759 F. Supp. 1397, 1401 (D. Minn. 1991).  For section 1404(a) purposes, a suit "might have been brought" in the alternative forum if "it is a district in which the plaintiff had a right to bring and maintain the action against the defendant without regard to the defendant's wishes or consent."  McAdoo v. Union Nat'l Bank, 558 F.2d 1313, 1316 (8th Cir. 1977).

**1.     Plaintiffs' Claims Might Have Been Brought in Florida.**

Federal law permits this matter to be venued in Florida.  There is complete diversity between plaintiffs and defendants and the amount in dispute in this action exceeds $75,000.  Therefore, federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a)(1).  Moreover, venue lies in Florida pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events giving rise to the claims occurred in the State of Florida. The Confidentiality Agreement was executed between Floridians and in Florida.  The trade secrets and confidential information that form the basis of plaintiffs' Complaint are in Florida.  Florida is also where the tortiuous interference referenced in plaintiffs' Complaint allegedly occurred.

### 2.    The Balance of Section 1404(a) Factors Favor Venue in the Middle District of Florida.

Section 1404(a) applies to changes of venue in civil actions and states: "For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer a civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).  Although a plaintiff's chosen forum is given presumptive weight, the plaintiff's forum choice is not an insurmountable obstacle.  Brockman v. Sun Valley Resorts, Inc., 923 F. Supp. 1176, 1179 (D. Minn. 1996).  In evaluating whether to transfer venue under section 1404(a), a district court has discretion to adjudicate motions "according to an individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 23 (1988).  The final analysis depends on the competing interests and facts of each case.  Steward v. Up North Plastics, Inc., 177 F.Supp.2d 953, 960 (D. Minn. 2001).

The other factors considered in a motion to transfer venue are: (1) the convenience of the parties; (2) the convenience of the nonparty witnesses; and (3) the interest of justice in light of this background.  Id. at 1179-80.  The beginning point, however, is whether the case to be transferred could have been brought in the district where the movant requests it be moved.  Tiedemann v. Schiff, Hardin & Waite, Civ. No. 02-3637 2002 WL 31898165 at *1 (D. Minn. Dec. 18, 2002).  The threshold requirement of showing that plaintiff's claims could have been brought in the Middle District of Florida is easily met, as plaintiff's claims arise from events taking place in Florida.

17

Consideration of the convenience of the parties, a factor under § 1404(a), weighs in favor of transferring the claims against Phillip Roy.  Plaintiffs are already litigating the claims it seeks a declaratory judgment on in Florida.  (Gillette Aff. Ex. 4.)  As the online docket to the Florida action shows, the parties have engaged in motion practice and discovery already.  (Gillette Aff. Ex. 5.)  Moreover, if this case remains venued in Minnesota, all parties will incur significant travel costs as well as disruption to their respective businesses.  The parties could achieve efficiencies by having litigation counsel only in Florida, where significant deposition and document discovery will likely occur and where another lawsuit between the parties is ongoing.  Therefore, the financial and logistical burdens of litigation and travel substantially favor venue in Florida.

Transferring plaintiffs' case to Florida would serve to reduce, not increase, plaintiffs' costs.  Plainly, Florida is the more convenient venue for Phillip Roy.  As such, analysis of the convenience factor leads to the conclusion that the transfer motion should be granted.

The second factor to be considered is the convenience of nonparty witnesses.  Phillip Roy's employees, the signatories to the Confidentiality Agreement, and other nonparty witnesses are all in Florida.  This factor also weighs in favor of transfer.

The motion to transfer is further supported by a review of the interests of justice.  This so-called "public factor" focuses on whether the case at hand presents novel issues of law, the location of the events giving rise to the action, the location of any physical evidence, relative judicial congestion of the possible venues, the public's interest in local adjudication of local controversies, and the relative familiarity of each forum with the

18

applicable law.  <u>Brockman</u>, 923 F. Supp. at 1182-83; <u>Tidemann</u>, at *2; <u>see also</u>,

<u>Integrated Molding Concepts, Inc. v. Stopol Auctions, L.L.C.</u>, Civ. No. 06-5015, 2007

WL 2263927 at *9 (D. Minn. Aug. 6, 2007).

The Florida lawsuit is similar to this action in that it is arises out of the

Confidentiality Agreement.   Judicial economy would, therefore, best be served by

hearing plaintiffs' claims against Phillip Roy in Florida, where there is already related

litigation among the parties.

**III.    THE COURT SHOULD DECLINE TO EXERCISE ITS JURISDICTION
UNDER THE FEDERAL DECLARATORY JUDGMENT ACT**

Plaintiffs allege that the Court has jurisdiction because the amount in controversy

between the parties exceeds $75,000.  (Compl. ¶ 5.)  A review of plaintiffs' Complaint

shows that they are not seeking anything other than declaratory relief.  As such,

plaintiffs' claims are actually based on 28 U.S.C. §§ 2201, <u>et.</u> <u>seq</u>., the Federal

Declaratory Judgment Act.  Even if the Court were to find that it has personal jurisdiction

over Phillip Roy, the Court should decline to entertain plaintiffs' action under the

Declaratory Judgment Act and dismiss the Complaint.

"The United States Supreme Court has determined that a district court's decision

to stay or dismiss a declaratory judgment action is governed by the discretionary standard

set forth in <u>Brillhart v. Excess Ins. Co.</u>, 316 U.S. 491, 62 S. Ct. 1173, 86 L. Ed. 1620

(1942)."  <u>Wells' Dairy, Inc., v. The Estate of J.P. Richardson, Jr.</u>, 89 F.Supp.2d 1042,

1059 (N.D. Iowa 2000).

"The <u>Brillhart</u> abstention doctrine operates to allow district courts to avoid indulging in 'gratuitous interference' where there is pending in state court another suit involving the same parties and "presenting opportunity for ventilation of the same state law issues"  <u>Id</u>. (quoting <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 282-83 (1995). Additionally,

> Although <u>Brillhart</u> did not set out an exclusive list of factors governing the district court's exercise of this discretion, it did provide some useful guidance in that regard.  The Court indicated, for example, that in deciding whether to enter a stay, a district court should examine "the scope of the pending state court proceeding and the nature of defenses open there."  <u>Id</u>. This inquiry, in turn, entails consideration of "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, whether such parties are amenable to process in that proceeding, etc."  <u>Id</u>.  Other cases, the Court noted, might shed light on additional factors governing a district court's decision to stay or to dismiss a declaratory judgment action at the outset.

<u>Wilton</u> at 282-83, 515 U.S.  In the final analysis, a district court must "ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can be better settled in the proceeding pending in state court"  <u>Brillhart</u>, 316 U.S. at 495.  Thus, this Court may choose to dismiss this case by not exercising jurisdiction over the matter or by dismissing the case for failure to state a claim.

The questions courts consider in determining whether to dismiss the case by not exercising jurisdiction, include: (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;  (2) whether the declaratory judgment action was filed for the purpose of forum shopping in anticipation of suit to be filed by the other party, thus allowing the declaratory judgment plaintiff to gain precedence in

time or forum; (3) whether the federal court is a convenient forum for the parties and witnesses ; and (4) whether retaining the lawsuit in federal court would serve the purposes of judicial economy.  See Travelers Ins. Co. v. Louisiana Farm Bureau Federation, 996 F.2d 774, 778 (5th Cir.1993);  see also Psarianos v. Standard Marine, Limited, Inc., 12 F.3d 461, 463-64 (5th Cir. 1994); Odeco Oil & Gas Co. v. Bonnette, 4 F.3d 401, 404 (5th Cir.1993).  The answer to the first two questions is "yes" and the answer to the second two questions is "no."  As such, the Court should not exercise jurisdiction over plaintiffs' declaratory judgment action, and should dismiss this case.

### A.    There Is A Pending State Action In Which All Of The Matters In Controversy May Be Fully Litigated.

The existence of a pending state court proceeding in which the issues might be fully litigated is one of the main factors in considering whether to deny declaratory relief. Rowan Cos. V. Griffin, 876 F. 2d at 26, 29 (5th Cir. 1989).   As the Fifth Circuit has stated, "when a state lawsuit is pending, more often than not, issuing a declaratory judgment will be tantamount to issuing an injunction – providing the declaratory plaintiff an end run around the requirements of the Anti-Injunction Act." Travelers Ins. Co., 996 F.2d at 776 (citing Minnesota  Employers' Ins. Ass'n v. Jackson, 862 F.2d 491, 506 (5th Cir.1988)).  Simply put, federal courts will not seize litigations from state courts under the declaratory judgment procedure merely because a defendant goes to federal court to begin his federal law defense before the state court begins the case under state law.  See Public Service Comm'n of Utah v. Wycoff Co., 344 U.S. 237, 73 S. Ct. 236, 97 L. Ed. 291 (1952).

In <u>Int'l Assoc. of Entrepreneurs of America v. Angoff</u>, 58 F.3d 1266 (8th Cir. 1995), the Eighth Circuit cautioned that a sequence of events in which a party sues in state court and the defending party subsequently asks for declaratory judgment on the same matters "alerts us to be on guard." <u>Id</u>. at 1270.  "The Declaratory Judgment Act is not to be used either for tactical advantage by litigants or to open a new portal of entry to federal courts for suits that are essentially defensive or reactive to state actions." <u>Id</u>. "More specifically, the Declaratory Judgment Act is not to be used to bring to the federal courts an affirmative defense which can be asserted in a pending state action." <u>Id</u>.  In <u>Angoff</u>, abstention was favored after the declaratory judgment plaintiff had tried and failed to remove the state case, and was held to be attempting to improperly gain access to federal court.  This must be balanced against <u>BASF Corp. v. Symington</u>, 50 F.3d 555, 557 (8th Cir. 1995) where the Eighth Circuit held that, for abstention analysis, a court should look carefully to ensure that a state-court plaintiff was not being wrongfully denied his choice of forum; however, there is "no blanket prohibition on raising affirmative defenses by declaratory action." <u>Id</u>. at 558. Nevertheless, "where a declaratory plaintiff raises chiefly an affirmative defense, and it appears that granting relief could effectively deny an allegedly injured party its otherwise legitimate choice of the forum and time for suit, no declaratory judgment should issue." <u>Id</u>. at 559.

Plaintiffs' Complaint is entirely an affirmative defense that would effectively deny Phillip Roy its choice of forum and time of suit.  As such, the Court should not issue any declaratory judgments and should instead dismiss this matter.  The Court should deny declaratory relief to avoid gratuitous interference with the orderly and comprehensive

disposition of the state court litigation if the claims of all parties can satisfactorily be adjudicated in the state court proceeding. Matter of Magnolia Marine Transp. Co., 964 F.2d 1571, 1581 (5th Cir.1992) (citations omitted); see also Nationwide Insurance v. Zavalis, 52 F.3d 689, 692 (7th Cir.1995). The pending state court action in this case encompasses the issues raised by plaintiffs in this declaratory action. Plaintiffs may assert a defense to its obligations to Phillip Roy in the Florida case. Likewise, plaintiffs may maintain cross claims and counterclaims should it see fit. The maintenance of this declaratory judgment action would result in piecemeal adjudication of the Florida action and would reward plaintiffs' attempt to forum shop.

Most importantly to the present case, "[t]he anticipation of defenses is not ordinarily a proper use of the declaratory judgment procedure. It deprives the plaintiff of his traditional choice of forum and timing, and it provokes a disorderly race to the courthouse." Hanes Corp. v. Millard, 531 F.2d 585, 592-93 (D.C. Cir. 1976); see also Angoff, 58 F.3d 1266. Declaratory actions founded exclusively on a defense to a state law claim should be dismissed as a tactical maneuver calculated to deny potential plaintiffs their traditional right to choose the forum and time of suit. See BASF Corp., 50 F.3d at 555; Koch Eng'g Co. v. Monsanto Co., 621 F. Supp. 1204, 1207 (E.D. Mo. 1985); Nat'l Union Fire Ins. Co. v. Lippert Bros., Inc., 233 F. Supp. 650, 656 (D. Neb. 1964); Eureka Federal Sav. & Loan Ass'n of San Francisco v. Flynn, 534 F. Supp. 479 (N.D. Cal. 1982); Poles, Inc. v. Beecker's Estate, 461 F. Supp. 878 (E.D. Pa. 1978); Hanes Dye & Finishing Co. v. Caisson Corp., 309 F. Supp. 237 (M.D. N.C. 1970).

Plaintiffs are improperly attempting to raise their probable defenses in the Florida action in this Court.  Accordingly, this Court should decline to entertain plaintiffs' Complaint.

**B.     This Action Was Filed For The Purpose Of Forum Shopping In Anticipation Of Suit To Be Filed By Defendant, Thus Allowing The Declaratory Judgment Plaintiff To Gain Precedence In Time Or Forum.**

Anticipatory suits brought pursuant to the Declaratory Judgment Act are disfavored because they are an aspect of forum-shopping.  See Psarianos, 12 F.3d 461 at 463-64; Odeco, 4 F.3d at 404.  "[T]he federal declaratory judgment [Act] is not a prize to the winner of a race to the courthouses."  Days Inns of America, Inc. v. Reno, 935 F. Supp. 874, 878 (W.D. Tex. 1996).  In that case, the court concluded it need not look to the chronological order in which lawsuits are filed, but rather should focus on whether the declaratory action was filed in anticipation of the other action.  Here, there is no question but that it was.  Plaintiffs filed their suit for no other purpose than to litigate, on its home turf, the issues set forth in the Florida action.  Indeed, they included a draft of the Florida complaint as an exhibit to their complaint.  As the Seventh Circuit stated long ago:  "[T]he wholesome purposes of declaratory acts would be aborted by its use as an instrument of procedural fencing either to secure delay or to choose a forum."  American Automobile Ins. Co. v. Freundt, 103 F.2d 613, 617 (7th Cir.1939).   This is especially true when, as in this case, a state court provides an adequate forum for resolution of the dispute.

Allowing the declaratory action to proceed would result in piecemeal adjudication of the disputes between plaintiffs and Phillip Roy, and would reward plaintiffs' attempt at

forum shopping.  Accordingly, dismissal of this action in favor of the state court proceeding commenced in Pinellas County, Florida is proper and warranted. See Torch, Inc. v. LeBlanc, 947 F.2d 193, 194-96 (5th Cir.1991); Mission Ins. Co. v. Puritan Fashions Corp., 706 F.2d 599, 600-03 (5th Cir.1983).

**C.    Retaining The Lawsuit In Federal Court Would Not Serve The Purposes Of Judicial Economy.**

As noted by Justice Felix Frankfurter, "'it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit' when the entire controversy is already being litigated in a state court that is capable of resolving the dispute." Aquafaith Shipping, Ltd. v. Jarillas, 963 F.2d 806, 809 (5th Cir. 1992) (quoting Brillhart, 316 U.S. at 495).  As the Fifth Circuit has recognized, "[G]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided."  Id.  Prosecution of this action would be duplicative, vexatious and troublesome when a Florida state court is adjudicating the very same controversy.  See ACF Indus. v. Guinn, 384 F.2d 15 (5th Cir. 1967), cert. denied, 390 U.S. 949 (1968); see also Employers' Liab. Assurance Corp. v. Mitchell, 211 F.2d 441, 443 (5th Cir.), cert. denied, 347 U.S. 1014 (1954).  The Court should dismiss this case.

**D.    Workman's Declaratory Judgment Action Is Improper As An Attempt To Establish Its Non-Liability In Tort And Contract.**

By asking for declaratory judgment, plaintiffs improperly seek to have the Court pre-determine its tort and contractual liability.   Plaintiffs ask the Court to declare what relief, if any, the parties are entitled to as a result of plaintiffs' actions.  It is not the purpose of the Declaratory Judgment Act to enable prospective defendants in tort actions

to obtain a declaration of non-liability.  See Torch, 947 F.2d at196 n. 2; see also Sun Oil

Co. v. Transcontinental Gas Pipe Line Corp., 108 F. Supp. 280, 282 (E.D.Pa.1952), aff'd,

203 F.2d 957 (3rd Cir.1953); United Ins. Co. v. Harris, 939 F. Supp. 1527, 1534-35

(M.D.Ala.1996); Friedman v. Geller, 925 F. Supp. 611, 613 (E.D.Wis.1996); Douglas v.

Don King Prods., Inc., 736 F. Supp. 223, 225 (D.Nev.1990).   No matter how plaintiffs

try to frame the issues in this case, plaintiffs want the Court to determine its liability for

its tortious conduct.  The Court should decline to do so.

The purpose of the Declaratory Judgment Act is not the declaration of non-liability

for past conduct, such as breach of contract, but to settle actual controversies *before* they

ripen (prior to injury) into violations of law or breach of some contractual duty and to

prevent the accrual of avoidable damages to those uncertain of rights.  See Chevron

U.S.A., Inc. v. Traillour Oil Co., 987 F .2d 1138, 1154 (5th Cir.1993); see also

Cunningham Brothers, Inc., 407 F.2d at 1168.  The declaratory relief requested by

plaintiffs is simply impermissible.  Accordingly, dismissal of plaintiffs' Complaint is

appropriate.

### E.    Minnesota Is An Inconvenient Forum.

As previously mentioned, Florida provides a convenient, proper forum for the

parties. Many of the witnesses needed for resolution of this dispute are in Florida,

including the defendant's employees.  Moreover, substantial documentary evidence is

located in Florida.  Florida, not Minnesota, will be the most convenient forum for the

parties to resolve these issues.  As a result, dismissal is proper as the convenience of the

parties and witnesses in this case favors the state court action. See Mission Ins. Co., 706

F.2d at 602 ("The convenience of parties and witnesses has traditionally been considered in determining whether to hear a declaratory judgment action.").

## CONCLUSION

Plaintiffs cannot satisfy any of the five jurisdictional considerations to establish specific or general personal jurisdiction over Phillip Roy in a Minnesota court.  There is no evidence that establishes the requisite contacts to indicate that Phillip Roy purposefully availed itself of the privilege of doing business in Minnesota.  Because plaintiffs cannot carry their burden to prove that sufficient contacts exist, plaintiffs' lawsuit should be dismissed.

Moreover, the facts giving rise to plaintiffs' claims did not occur in Minnesota. They occurred in Florida.  Most, if not all, of the witnesses necessary to prosecute or defend these claims are located in Florida.  For the foregoing reasons, Phillip Roy respectfully requests that the Court grant its motion to dismiss or, in the alternative, order that this action be transferred to the Middle District of Florida.

Dated: September  11 , 2009                FRUTH, JAMISON & ELSASS, PLLC


By:   s/ Adam A. Gillette
        Douglas L. Elsass (# 219241)
        Adam A. Gillette (#0328352)
      3902 IDS Center
      80 South Eighth Street
      Minneapolis, Minnesota 55402
      Telephone:   (612) 344-9700
      Facsimile:    (612) 344-9705
      delsass@fruthlaw.com
      agillette@fruthlaw.com

      *ATTORNEYS FOR DEFENDANTS*