UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| WORKMAN SECURITIES CORPORATION, a Minnesota corporation, and ROBERT VOLLBRECHT, a Minnesota resident,<br><br>                   Plaintiffs,<br><br>v.<br><br>PHILLIP ROY FINANCIAL SERVICES, LLC, a Florida limited liability company, and PHILLIP ROY FINANCIAL CONSULTANTS, LLC, a Florida limited liability company,<br><br>                   Defendants. | Case No. 09-CV-1723 (PJS/JSM)<br><br>MEMORANDUM OPINION AND ORDER GRANTING MOTION TO DISMISS |

      Christopher P. Parrington, Benjamin R. Skjold, and Ryan P. Myers, SKJOLD BARTHEL, P.A., for plaintiffs.

      Douglas L. Elsass and Adam A. Gillette, FRUTH, JAMISON & ELSASS, PLLC, for defendants.

      Plaintiffs Workman Securities Corporation ("Workman") and Robert Vollbrecht bring this declaratory-judgment action against defendants Phillip Roy Financial Services, LLC ("Phillip Services") and Phillip Roy Financial Consultants, LLC ("Phillip Consultants"). (The Court will sometimes refer to the two defendants together as "Phillip Roy.") This matter is before the Court on Phillip Roy's motion to dismiss for lack of personal jurisdiction. Phillip Roy also argues that, even if the Court does have jurisdiction, the Court should abstain from exercising that jurisdiction under *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942). Finally, Phillip Roy contends that, if the Court denies its motion to dismiss, the Court should transfer this case to the United States District Court for the Middle District of Florida. For the reasons that follow, the Court grants Phillip Roy's motion to dismiss for lack of personal

jurisdiction, rendering moot Phillip Roy's arguments about *Brillhart* abstention and transfer of venue.

## I.  BACKGROUND

Workman, a Minnesota corporation with its principal place of business in Minnesota, is a securities brokerage and dealership company.  Compl. ¶¶ 1, 7.  Vollbrecht, a resident of Minnesota, is the president of Workman.  Compl. ¶ 2; Vollbrecht Aff. ¶ 1.  Phillip Services, a Delaware limited-liability company, sells insurance and financial-planning services.[1]  Compl. ¶ 9; Wasserman Aff. ¶ 3.  Phillip Consultants, a Florida limited-liability company, is the wholesale division for Phillip Services' retirement investments.  Compl. ¶¶ 4, 10.  Both Phillip Services and Phillip Consultants have their principal place of business in Sarasota, Florida.  Compl. ¶¶ 3-4.  For several years, Phillip Roy and Workman had an informal arrangement under which the companies' agents helped to sell each other's products.  Vollbrecht Aff. ¶¶ 4-5, 7-8.

This action arises out of the relationship between Workman and a sales representative named John Leonard, who is a resident of Florida.  Compl. ¶ 12.  Leonard worked as a sales representative for Phillip Roy in Florida.[2]  In 2004, Leonard and Phillip Roy entered into an agreement under which Leonard agreed to maintain the confidentiality of certain customer lists, trade secrets, and proprietary information.  Compl. ¶ 14 & Ex. A.  The confidentiality agreement between Phillip Roy and Leonard is governed by Florida law.  Compl. Ex. A ¶ 6.

---

[1]The complaint incorrectly alleges that Phillip Services is a Florida limited-liability company.  *See* Gillette Aff. Ex. 3, Sept. 11, 2009 [hereinafter "First Gillette Aff."] (printout from the Florida State Department's website indicating that Phillip Services is a foreign LLC incorporated in Delaware).

[2]Leonard initially worked for Phillip Roy's predecessor, Phil & Associates.  Compl. ¶ 12.  All references to Phillip Roy are intended to include its predecessors.

At some point — the complaint does not say exactly when — Leonard became a registered representative of Workman. Compl. ¶ 19. While working for Workman in Florida, Leonard received client referrals from Phillip Roy. Compl. ¶ 20. Leonard's work for Workman angered Phillip Wasserman, the president and sole member of both Phillip Services and Phillip Consultants. Wasserman apparently concluded that, in the course of representing Workman, Leonard was violating his confidentiality agreement with Phillip Roy.

In early 2009, Wasserman contacted Workman on several occasions — sometimes through profanity-laced e-mails — and demanded that Workman terminate its affiliation with Leonard. Compl. ¶¶ 27-28; Wasserman Decl. ¶¶ 2-3, Oct. 29, 2009. When Workman failed to do so, Wasserman threatened litigation and demanded money from Workman. Vollbrecht Aff. ¶¶ 10-11, 13-14 & Exs. B, D. Wasserman also sent an e-mail to a customer of Workman in June 2009; in that e-mail, Wasserman accused Leonard of fraud and alleged that Workman "had [been sued in] many class action suits because of the full lack of liquidity." Vollbrecht Aff. Ex. E. When the customer asked Wasserman not to contact him again, Wasserman responded that "[t]he next contact wil[l] be a supeona [sic] from our attorney." Vollbrecht Aff. Ex. E.

On July 2, 2009, Wasserman sent an e-mail to Leonard and attached a copy of a complaint that Wasserman said would soon be filed in a Florida state court. In that draft complaint, Phillip Roy sought recovery for various business torts and breaches of contract from Workman, Vollbrecht, Leonard, and two other individuals. Compl. ¶ 31 & Ex. B. A few days after learning of the draft complaint, Workman preemptively filed this lawsuit seeking a declaration that it had not violated either the Minnesota or Florida Trade Secrets Act and that it had not tortiously interfered with any of Phillip Roy's contracts. On the same day that Workman

filed this federal lawsuit in Minnesota, Phillip Roy filed its state lawsuit in Florida. First Gillette Aff. ¶ 2 & Ex. 1. Thus, as matters stand, Phillip Roy is pursuing an action in a state court in Florida against Workman, Vollbrecht, and others, alleging that they are liable to Phillip Roy, while Workman and Vollbrecht are pursuing this action in a federal court in Minnesota, seeking a declaration that they are not liable to Phillip Roy.

## II. ANALYSIS

In a diversity action, a federal court may exercise jurisdiction over nonresident defendants if exercising that jurisdiction is authorized by the long-arm statute of the forum state and consistent with the Due Process Clause. *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1073 (8th Cir. 2004). Minnesota's long-arm statute authorizes jurisdiction over nonresidents to the full extent permitted by the Due Process Clause, and thus this Court need determine only whether exercising jurisdiction over Phillip Roy is constitutional. *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn. 1992) (if the exercise of personal jurisdiction comports with due process, then the requirements of Minnesota's long-arm statute are met).

The Due Process Clause requires that a defendant have "certain minimum contacts" with the forum state so that exercising jurisdiction over the defendant will not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation and quotations omitted). "It is essential in each case that there is some act by which the 'defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427, 1432 (8th Cir. 1995) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Without such "purposeful availment," the defendant has no

basis to "reasonably anticipate being haled into court" in the forum state, and the forum state cannot exercise jurisdiction over the defendant. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

There are two types of personal jurisdiction that a state may exercise over a defendant. If the defendant's contacts with the state are "continuous and systematic," the state may, consistent with the Due Process Clause, adjudicate any cause of action against the defendant, whether or not that cause of action relates to the defendant's contacts with the state. In such circumstances, the state is said to exercise "general jurisdiction" over the defendant. *Dever*, 380 F.3d at 1073 (citation and quotations omitted). If the defendant's contacts with the state are not sufficient to give rise to general jurisdiction, the state might nevertheless be able to adjudicate a cause of action that relates to the defendant's (limited) contacts with the state. In such circumstances, the state is said to exercise "specific jurisdiction" over the defendant. *Id.*

The two defendants in this case — Phillip Services and Phillip Consultants — appear to have had almost no contacts with Minnesota, much less contacts that reflect the purposeful availment of the benefits and protections of Minnesota law. Both Phillip Services and Phillip Consultants are headquartered in Florida. Phillip Consultants is incorporated in Florida, and Phillip Services is incorporated in Delaware. The sole member of Phillip Services and Phillip Consultants is Wasserman, who is a resident of Florida. Neither Phillip Services nor Phillip Consultants owns any real or personal property in Minnesota, neither maintains an office in Minnesota, and neither employs an agent in Minnesota. Wasserman Aff. ¶¶ 4-6. Neither Phillip Services nor Phillip Consultants is registered to do business in Minnesota, Wasserman Aff. ¶ 8, and there is no evidence that either company has ever transacted any business in Minnesota. The

almost complete absence of contacts between the defendants and Minnesota rather strongly suggests that they cannot be sued in Minnesota.

Workman nevertheless argues that this Court may exercise specific jurisdiction over defendants in this case. In support of its argument, Workman relies heavily on Wasserman's communications to Workman, in which he accused Workman of wrongdoing, asked to be compensated for that wrongdoing, and, after his demands went unheeded, threatened to sue Workman. But contacts *about* a dispute do not create jurisdiction *over* that dispute. As Workman would have it, if a Minnesota resident traveled to Florida and, while in Florida, got into an altercation with a Florida resident, the Minnesota resident could sue the Florida resident in Minnesota, as long as, before being sued, the Florida resident sent an e-mail to the Minnesota resident about the altercation.

Workman is incorrect. Having contact with a Minnesota *resident* is not the same as conducting activities within *Minnesota*. If it were, then any person who caused an injury to a Minnesotan anywhere in the world could be sued in Minnesota. That is clearly not the law; indeed, the Eighth Circuit has made clear that even "entering into a contract with a forum resident does not provide the requisite contacts between a [nonresident] defendant and the forum state." *Bell Paper Box, Inc. v. Trans W. Polymers, Inc.*, 53 F.3d 920, 922 (8th Cir. 1995) (citation and quotations omitted). In sending e-mails to Workman, Wasserman was contacting a Minnesota resident, but he was not "purposefully avail[ing] [himself] of the privilege of conducting activities within [Minnesota], thus invoking the benefits and protections of its laws.'" *Hanson*, 357 U.S. at 253. Wasserman did not subject his companies to the jurisdiction of

Minnesota courts simply by threatening to sue Workman in Florida over activities that occurred in Florida.[3]

Workman also relies on the fact that Workman representatives sold Phillip Roy products in Minnesota. But this lawsuit has nothing to do with Workman's sale of Phillip Roy products to Minnesotans, and thus those sales cannot support specific jurisdiction. Moreover, there is no suggestion that those sales gave Minnesota general jurisdiction over Phillip Roy, particularly given the general rule that "[t]he unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State." *Hanson*, 357 U.S. at 253.

Without a serious argument that this Court can exercise jurisdiction over Phillip Roy, Workman contends in the alternative that it should be given an opportunity to conduct jurisdictional discovery because such discovery might turn up evidence of presently unknown contacts between Phillip Roy and Minnesota. Workman points to the fact that Phillip Roy maintains a website and argues that, depending on the nature of the website and the quantity of contacts with Minnesota generated by the website, the courts of Minnesota may be able to exercise general jurisdiction over Phillip Roy. *See Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 712 (8th Cir. 2003) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997)).

---

[3]Workman also complains of Wasserman's contacts with a Workman customer, and, at oral argument, Workman asked that it be allowed to amend its complaint to assert some kind of tort claim against Phillip Roy based on these contacts. Putting aside the fact that Workman was not able to describe exactly what type of claims it wants to bring against Phillip Roy, it is undisputed that the Workman customer is not located in Minnesota and that Wasserman's contacts with the customer are only tangentially related to this lawsuit. Those contacts surely do not give a Minnesota court jurisdiction over these defendants.

In *Lakin*, the Eighth Circuit held that the district court abused its discretion in refusing to permit the plaintiff to conduct jurisdictional discovery to determine the quantity of the defendant's contacts with the forum state through its website. *Lakin*, 348 F.3d at 713. But the Eighth Circuit did so only after finding that the defendant's "sophisticated, interactive" website demonstrated that the defendant could have used the website to engage in the type of continuous and systematic contacts with residents of the forum state that could give rise to general jurisdiction:

> Not only can Missouri consumers review detailed company, service, and financial information about Prudential Savings, they can also exchange electronic mail; establish and access secure online accounts; and calculate home-mortgage rates. More importantly, Missouri consumers are also able to complete online applications for home-equity loans and lines of credit. The site states that it provides electronic responses to the inquiry within three to five business days. Through its Web site Prudential Savings could have continuous, significant contacts with Missouri residents. In fact, because its site is available twenty-four hours a day, it is possible for Prudential Securities to have contacts with the State of Missouri that are continuous and systematic to a degree that traditional foreign corporations can never even approach.

*Id.* at 712 (internal quotations, brackets, and citation omitted).

The website maintained by Phillip Roy does not remotely resemble the robust and sophisticated website described in *Lakin*. *See* Parrington Aff. Ex. C (printout of Phillip Roy's website). Phillip Roy's website consists of a single home page. At the top of that page is the name "Phillip Roy Financial Services" and a phone number. Next appears a 22-word message from a dog named "Little A,"whose photo accompanies the message. Little A invites the reader to request a "powerful free special report on Annuities." Little A tells the reader nothing about the report, except that is "informational . . . And tasty!!!" Just below the message from Little A

is a link to a "blog." Plaintiffs offered no evidence about the contents of the blog, but the blog appears to consist of posts by Wasserman about such diverse topics as a holiday party that he recently attended with "the Donald" and the attempted bombing of a Northwest Airlines flight near Detroit ("Here's an idea — the next time we are on a plane and a terrorist threatens us — lets beat the nut to death"). Finally, the web page provides a space where the reader can provide his name and address and receive the "special report on annuities" recommended by Little A.

Phillip Roy's website is less sophisticated than a typical teenager's Facebook page. The website provides no information about Phillip Roy save its telephone number. It does not describe what kind of business Phillip Roy conducts or even where Phillip Roy is located. Visitors to the website cannot purchase products, apply for insurance, access an account, conduct any kind of transaction, or exchange e-mail with anyone.

Given the passive nature of Phillip Roy's website, it is extremely unlikely that jurisdictional discovery would uncover evidence that Phillip Roy had such a large quantity of contacts with Minnesota that the Court could exercise general personal jurisdiction over it. It is highly unlikely that thousands of Minnesotans have requested a "special report" on annuities through this crude and cryptic website. Even if the Court is mistaken, Workman would have to show not just that Phillip Roy mailed a lot of special reports to Minnesota, but that these mailings gave rise to a significant amount of actual business with Minnesota residents. In this regard, it is worth noting that the defendant in *Lakin* maintained approximately $10 million in home-equity loans and lines of credit with residents of the forum state. *Lakin*, 348 F.3d at 706. Here, by contrast, there is no evidence that Phillip Roy has ever sold anything to anyone in Minnesota.

Workman's request for discovery lacks any reasonable basis in the record and is based on pure speculation. *Cf. Steinbuch v. Cutler*, 518 F.3d 580, 589 (8th Cir. 2008) (holding that the district court should not have denied jurisdictional discovery because the plaintiff "offered documentary evidence, and not merely speculations or conclusory allegations, about Hyperion's contacts with Arkansas"), *cert. denied*, 129 S. Ct. 223 (2008). If Workman were entitled to jurisdictional discovery on this showing, then it is difficult to imagine a case in which a plaintiff would not be entitled to jurisdictional discovery, given that, in today's electronic age, almost every commercial entity — and many human beings — maintain a web page. Workman's request for jurisdictional discovery is therefore denied.

For what it is worth, even if jurisdictional discovery disclosed that the Court could exercise personal jurisdiction over Phillip Roy, the Court would transfer this case to Florida under 28 U.S.C. § 1404(a). This is not a close call. At the heart of this lawsuit is a confidentiality agreement governed by Florida law that was entered into in Florida between two residents of Florida and then allegedly breached in Florida. Minnesota has little interest in this lawsuit, and virtually all of the evidence related to this lawsuit — including the vast majority of the witnesses — are located in Florida.

Finally, the Court notes that, even if it had personal jurisdiction over Phillip Roy, and even if it did not transfer this action to Florida under § 1404(a), the Court would still decline to exercise jurisdiction over this case under *Brillhart v. Excess Insurance Co. of America*, 316 U.S. 491 (1942), and *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). *Brillhart* and *Wilton* hold that the Declaratory Judgment Act gives federal courts "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton*, 515 U.S. at 286. A district court may properly decline to exercise that discretion when there are parallel state-court proceedings

involving the same parties and the same state-law issues.[4] *Wilton*, 515 U.S. at 290; *Brillhart*, 316 U.S. at 495.

This case presents a textbook example of a situation in which abstention under *Brillhart* and *Wilton* is appropriate. In this action, Workman is essentially asking this Court to declare that Workman should win the Florida action. Aside from the fact that the Florida action includes additional defendants and additional allegations, the Florida action is the mirror image of this action: In this action, Workman seeks a declaration that it did not tortiously interfere with Phillip Roy's contracts and did not unlawfully appropriate any of Phillip Roy's trade secrets. Compl. ¶¶ 43-68. In the Florida action, Phillip Roy alleges that Workman tortiously interfered with its contracts and unlawfully appropriated its trade secrets. First Gillette Aff. Ex. 1 at 18-20, 22, 26-27, 30. Under these circumstances — when a party is essentially attempting to use the Declaratory Judgment Act to try a pending state-court action in federal court — abstention under *Brillhart* and *Wilton* is appropriate.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' amended motion to dismiss [Docket No. 8] is GRANTED IN PART and DENIED IN PART.

2. The motion is GRANTED to the extent that it seeks dismissal for lack of personal jurisdiction.

---

[4]The Supreme Court has said that a stay, rather than dismissal, is ordinarily appropriate under *Brillhart*. *Wilton*, 515 U.S. at 288 n.2; *see also Royal Indem. Co. v. Apex Oil Co.*, 511 F.3d 788, 797-98 (8th Cir. 2008) (affirming district court's decision to abstain under *Brillhart* but vacating dismissal and remanding for entry of a stay).

3. The motion is DENIED AS MOOT in all other respects.

4. Plaintiffs' complaint [Docket No. 1] is DISMISSED WITHOUT PREJUDICE for lack of personal jurisdiction.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: January 11, 2010

s/Patrick J. Schiltz
Patrick J. Schiltz
United States District Judge